**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

---

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

November 12, 2024

***By Email and ECF***
The Honorable Dale E. Ho
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *United States v. Vincent Medina*, 24 CR 123 (DEH)

Honorable Judge Ho:

Vincent Medina is a sad, broken man. He fully accepts responsibility for dealing drugs in his neighborhood, and for shooting at rival dealers who had attacked him. He candidly acknowledged his culpability before Your Honor on May 24, 2024, pleading guilty to one count of 21 U.S.C. §§ 846 and 841 (b)(1)(C), and one count of 18 U.S.C. § 924 (c)(1)(A)(ii). He now faces a mandatory minimum sentence of 84 months imprisonment.

In the September 6, 2024 Presentence Investigation Report (PSR), the Probation Department recommends a sentence of 102 months, representing the bottom of the applicable advisory Guidelines range. That is more punishment than necessary. On the unique facts of this tragic case, 84 months of imprisonment is amply sufficient to achieve the statutory aims of sentencing, set forth in 18 U.S.C. § 3553(a). Seven years in prison is multiples longer than any time Mr. Medina has ever been incarcerated. It is a severe punishment. And it is punishment enough.

    I.    **Vincent Medina's lifelong intellectual disability.**

[redacted]

Hon. Dale E. Ho  
United States District Judge  
Southern District of New York

Re. *United States v. Vincent Medina*  
24 CR 123 (DEH)



Times and acceptable English usage would change, but Mr. Medina's ▓▓▓▓▓▓▓▓▓▓.

Growing up disabled in the South Bronx, Mr. Medina was vulnerable. He was subjected to constant bullying, ridicule, and abuse by the same set of other children. *See* PSR ¶ 63. It went on, relentlessly, for years. And it was violent. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ At just 17 years old, he was convicted of four felonies. PSR ¶¶ 45-48. He would be sentenced to concurrent Youthful Offender prison sentences. He was paroled a year later and discharged a day before his 21st birthday. *Id.*

## II. Mr. Medina's experience of family violence and destabilized childhood.

It is not clear whether the exasperated educators disapproving of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ knew his family history. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ they known the details, Mr. Medina surely would have been seen in a different light. The family of seven lived amidst intractable poverty. PSR ¶¶ 60, 61. They survived on public assistance and food stamps. *Id.* Mr. Medina's father, Felix Medina, did not work. *See* PSR ¶ 59. He used drugs in the home, in front of the children. PSR ¶ 61.

Until he finally left the family, Felix Medina was a terrifying, menacing presence. He was violently abusive. PSR ¶ 61. His cruelty was sadistic, culminating in a savage act of brutal discipline when ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ He has not seen, spoken with, or had

Hon. Dale E. Ho                                                                                              Re. *United States v. Vincent Medina*
United States District Judge                                                                                                  24 CR 123 (DEH)
Southern District of New York

any contact with his father for more than ten years. PSR ¶ 59. He has no interest in doing so. But he still carries the scars on his forearm.

### III.   Incarceration will separate Mr. Medina from needed family support.

Felix Medina abused his son. But of all her children, Judith Herrera has always loved Mr. Medina, perhaps the best. She sympathizes with him. She witnessed his struggles to keep up with his peers ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mr. Medina always felt his mother's love very directly. It was something he understood without any difficulty.

Describing his mother's steadfast support, Mr. Medina is quickly emotional. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ For his part, Mr. Medina suffers knowing that, ▮▮▮▮▮▮▮▮▮▮▮▮ Ms. Herrera needs his help. It has been hard for him. The year he has spent at the Metropolitan Detention Center (MDC) is the longest he has ever gone without seeing her. During the Presentence Interview, Mr. Medina was asked whether being in pretrial detention has been difficult. He paused, then through sudden tears, sobbed "I miss my mother."

Mr. Medina takes after his mother in how much he loves his own children. He has three. He misses them, very much. Since his arrest, he has only seen his ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, once. It was in court, the day of his guilty plea. ▮▮▮▮▮▮ came from New Jersey with her mother to show him support. Seeing her in the gallery, Mr. Medina was overcome with emotion. *See* PSR ¶ 68.

Mr. Medina has not seen either of his sons. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ His fraught relationship with their mother has not always been secure. *Id.* They separated amidst mutual suspicions of infidelity. They stayed connected for the sake of the boys. Mr. Medina contributed what he could to their support. But raising two boys is costly, and Mr. Medina was rarely able to provide enough. Since he was detained, the relationship is over.

### IV.   The offense warrants a sentence of 84 months.

Mr. Medina made money selling crack on the block outside his apartment building. He lived there ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. PSR ¶ 70. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.*

In 2023, dealers from the adjacent area started coming onto the block and selling drugs. On November 16th, they came back again. PSR ¶¶ 10-12. Mr. Medina and his associates argued with them. *Id.* ¶ 13. Both sides separated. The dealers then followed Mr. Medina's group to the front of an apartment building. *Id.* ¶¶ 17, 18.

There, one of the dealers suddenly punched Mr. Medina in the head. In response, Mr. Medina pulled out a gun and fired several shots at them. PSR ¶ 19. Another one of the dealers, Daniel Scott, fired multiple times at Mr. Medina, who escaped into the building. PSR ¶¶ 20, 21. Mr. Medina was arrested two weeks later. PSR ¶ 25.

Mr. Scott was also arrested by federal authorities. *See* PSR ¶ 8. In July, Judge Subramanian sentenced him to 84 months in prison, the applicable mandatory minimum. *Id.*

Hon. Dale E. Ho  Re. *United States v. Vincent Medina*
United States District Judge  24 CR 123 (DEH)
Southern District of New York

### V.    Mr. Medina's imprisonment at the MDC has been unduly punishing.

Courts in this district routinely vary downward to account for the shamefully harsh conditions of detention at the MDC. I urge Your Honor to do the same for Mr. Medina.

Mr. Medina was taken into federal custody on January 5, 2024, one day after Judge Furman issued a decision in United States v. Chavez, — F. Supp. 3d —, No. 22-CR-303 (JMF), 2024 WL 50233 (S.D.N.Y. Jan. 4, 2024) detailing the deplorable conditions rampant at the MDC. For the entire length of his detention, Mr. Medina has been held there. PSR ¶ 7. He has seen the worst of it. He has repeatedly witnessed awful violence and chaos. He has endured countless, endless, seemingly purposeless lockdowns. The unpredictable lockdowns so frequently disrupt social visiting that nobody in Mr. Medina's family has come to see him. With malign indifference, the MDC routinely deprives him of sunlight, recreation, showers, or any programming whatsoever.

Over the past year, the MDC has somehow gotten worse. Last month, federal law enforcement authorities began a long and aggressive sweep of the institution. While it went on, for several days, the MDC deprived Mr. Medina of *water*.

For Mr. Medina, these conditions have been exceedingly painful. He mostly keeps to himself. During his long and arduous imprisonment at the MDC, he has never been disciplined for any reason. PSR ¶ 7. But he also cannot do anything to improve his circumstances. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Standing alone, the unduly harsh punishment Mr. Medina has borne over the 11 months of his detention wholly justifies a substantial downward variance. He will suffer several more months before the Bureau of Prisons transfers him to another facility. Mr. Medina respectfully asks Your Honor to recommend that he be designated to serve his sentence at the Federal Correctional Institution Fort Dix, in New Hanover Township, New Jersey. It is the closest federal prison to New York City, and Mr. Medina hopes his family will finally be able to visit him there.

### VI.    The Appropriate Sentence.

The legal standard is clear. While the Court must consider the applicable Sentencing Guidelines range, "the Sentencing Guidelines are just that, guidelines, and … 'they truly are advisory.' " *United States v. Douglas*, 713 F.3d 694, 700 (2d Cir. 2013) (quoting *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*)). Rather than deferring to the Guidelines, the Court "must make an individualized assessment based on the facts presented" and "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007); *see also United States v. Dorvee*, 616 F.3d 174, 182 (2d Cir. 2010). In making this assessment, the Court must "consider every convicted person as an individual," and its sentence must "fit the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 487–88 (2011) (internal citations omitted).

Hon. Dale E. Ho  Re. *United States v. Vincent Medina*
United States District Judge  24 CR 123 (DEH)
Southern District of New York

"A sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *Cavera*, 550 F.3d at 188. In exercising this discretion, the Court takes as its "lodestar the parsimony clause of 18 U.S.C. § 3553(a)," which requires the Court to "impose a sentence sufficient, but not greater than necessary, to comply with the factors set out in 18 U.S.C. § 3553(a)(2)": "proportionality, deterrence, incapacitation, and rehabilitation." *Douglas*, 713 F.3d at 700; *see also Pepper*, 562 U.S. at 490–91.

Each of the Section 3553(a)(2) sentencing factors supports imposing no more than the bottom of the mandatory minimum sentence of 84 months. Mr. Medina understands that his offense calls for punishment. He lived ▮▮▮▮▮▮▮▮▮▮ in the very neighborhood where the shooting took place. He knows exactly how dangerous his conduct was. He fully acknowledges that it was a serious offense. Seven years of imprisonment—a significant portion of which will have been served under unduly harsh conditions at the MDC—reflects that seriousness, promotes respect for the law, and justly punishes Mr. Medina's conduct. *See* 18 U.S.C. § 3553(a)(2)(A).

Likewise, seven years in federal prison provides amply sufficient deterrence, both specific and general. *See* 18 U.S.C. § 3553(a)(2)(B). Seven years in federal prison is a severe punishment for Mr. Medina. It is multiple times longer than the longest period he has ever previously been incarcerated. *See* PSR ¶¶ 45-48. Those sentences were imposed nearly 20 years ago. A measure of how punishing a seven-year sentence will be for Mr. Medina ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It makes imprisonment more punishing for him. To navigate through life, he always relied heavily on the support and assistance of family and trusted loved ones. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ He has no intention of repeating the circumstance that landed him in this awful predicament. Seven years imprisonment is more than enough to specifically deter him.

Further, general deterrence simply does not justify increased punishment. There is widespread agreement that the certainty of apprehension is much more important for deterrence than the severity of punishment.[1] Three National Academy of Sciences panels have concluded, and empirical data have demonstrated, that "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 CRIME & JUST. 1, 28 (2006). Mr. Medina already is a stark cautionary example to others of the certainty of apprehension.

---

[1] *See, e.g.*, Valerie Wright, Sent'g Project, *Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment* 4–5 (2010), https://www.sentencingproject.org/wp-content/uploads/2016/01/Deterrence-in-Criminal-Justice.pdf (summarizing research); Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White-Collar Crime*, 8 CARDOZO J. CONFLICT RESOL. 421, 447–48 (2007).

Hon. Dale E. Ho  
United States District Judge  
Southern District of New York

Re. *United States v. Vincent Medina*  
24 CR 123 (DEH)

### VII. Conclusion

Vincent Medina is going to be away from his family for a long time. He will miss ███████████████████████████████. Nobody knows these sad truths more than Mr. Medina himself. He knows he brought this calamity upon himself. He knows what he did was wrong. He is deeply remorseful for his offense. He mourns the punishment his imprisonment will inflict on his family. On his behalf, I respectfully urge Your Honor to impose no more punishment the law requires: 84 months of imprisonment. For Mr. Medina, it is far more than enough to achieve the statutory and equitable goals of sentencing.

Thank you for considering this submission.

Christopher A. Flood, Esq.  
Federal Defenders of New York, Inc.  
52 Duane Street, 10th Floor  
New York, N.Y. 10007  
(212) 417-8734  
christopher_flood@fd.org  
*Counsel for Vincent Medina*

cc:     AUSA Jun Xiang, Esq. (By email and ECF)